UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLIVE BRANCH ENTERPRISES, INC., Plaintiff, - against - AMAZON.COM SERVICES, INC., Defendant. | No. 25 Civ. 240 (VSB) |

**MEMORANDUM OF LAW IN SUPPORT OF AMAZON'S MOTION TO COMPEL ARBITRATION**

DAVIS WRIGHT TREMAINE LLP
Geoffrey S. Brounell
Francesca Reifer
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 603-6404
geoffreybrounell@dwt.com
francescareifer@dwt.com

John Goldmark (*pro hac vice forthcoming)*
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Phone: (206) 757-8068
johngoldmark@dwt.com

*Attorneys for Defendant Amazon Services LLC, incorrectly sued as Amazon.com Services, Inc.*

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The Amazon.com Store and Third-Party Sellers. ..... 2

B. Sellers Must Agree to the BSA to Register Seller Accounts. ..... 2

C. Plaintiff Registered a Seller Account and Agreed to the BSA. ..... 3

D. The BSA Includes an Arbitration Agreement. ..... 4

E. Plaintiff Understands It Is Bound by the Arbitration Agreement, Having Invoked That Agreement To Initiate Arbitration Against Amazon Over Its Seller Account. ..... 4

III. PROCEDURAL HISTORY ..... 5

IV. ARGUMENT ..... 6

A. Plaintiff Entered a Valid Arbitration Agreement. ..... 7

1. Plaintiff Is Bound To Arbitrate Because Plaintiff Entered Into a Valid Arbitration Agreement. ..... 7

2. Plaintiff Is Bound To Arbitrate Under the Doctrine of Equitable and Judicial Estoppel. ..... 9

B. The Parties' Arbitration Agreement Covers This Dispute. ..... 11

1. The Parties Delegated Issues of Arbitrability to the Arbitrator. ..... 11

2. Plaintiff's Claims Fall Within the Broad Scope of the Arbitration Agreement. ..... 12

C. The Court Should Compel Arbitration and Dismiss the Action ..... 13

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
170 F.3d 349 (2d Cir. 1999)....9

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....6

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....6

*AT & T Tech., Inc. v. Commc'n Workers of Am.*,
475 U.S. 643 (1986)....13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....6

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*,
84 F.3d 622 (2d Cir. 1996)....10

*Bates v. Long Island R.R. Co.*,
997 F.2d 1028 (2d Cir. 1993)....11

*Best Concrete Mix Corp. v. Lloyd's of London Underwriters*,
413 F. Supp. 2d 182 (E.D.N.Y. 2006)....10

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....11, 12

*Costless Wholesale, Inc. v. Amazon.com Servs. LLC*,
2023 WL 6224825 (C.D. Cal. Sept. 20, 2023)....8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....6

*Doe v. Project Fair Bid Inc.*,
2011 WL 3516073 (W.D. Wash. Aug. 11, 2011)....7

*Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*,
982 F.3d 851 (2d Cir. 2020)....14

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....7

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
2022 WL 1997207 (S.D.N.Y. June 6, 2022)....7

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........8

*Great Lengths Universal Hair Extensions S.r.L. v. Gold*,
2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017)........9

*Hauenstein v. Softwrap Ltd.*,
2007 WL 2404624 (W.D. Wash. Aug. 17, 2007)........7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)........11, 12

*Hupala v. Tianhai Cent. Air Conditioning Co.*,
2023 WL 1824441 (W.D. Wash. Jan. 3, 2023)........8

*Lewis v. Samsung Elecs. Am., Inc.*,
2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023)........12

*McCrae v. Oak St. Health, Inc.*,
2024 WL 4692047 (S.D.N.Y. Nov. 4, 2024), *aff'd*, 2025 WL 415389
(S.D.N.Y. Feb. 6, 2025)........12

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)........8

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
190 F.3d 1 (2d Cir. 1999)........10

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)........12, 13

*Negron v. Weiss*,
2006 WL 2792769 (E.D.N.Y. Sept. 27, 2006)........10

*Peters v. Amazon Services, LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016)........8

*Riensche v. Cingular Wireless, LLC*,
2006 WL 3827477 (W.D. Wash. Dec. 27, 2006)........7

*Shenzhen Shileziyou Technologies Co. v. Amazon.com, Inc.*,
2021 WL 5848062 (N.D. Cal. Dec. 9, 2021)........8

*Smith v. Spizzirri*,
601 U.S. 472 (2024)........14

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020)........8

**Statutes**

9 U.S.C.
§ 2 .......... 6
§ 4 .......... 1, 6

Federal Arbitration Act ("FAA") .......... *passim*

**Other Authorities**

AAA Rule 7 .......... 12

Defendant Amazon.com Services LLC ("Amazon")[1] respectfully submits this memorandum of law in support of its motion to compel Plaintiff Olive Branch Enterprises, Inc.'s ("Plaintiff") claims to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

## I. INTRODUCTION

In addition to selling its own products, Amazon provides stores through which third parties can sell products directly to customers. Plaintiff has registered two such Amazon third-party seller accounts, one of which is named "Olive Branch Enterprises" and is the subject of this litigation. As a condition of selling in the Amazon.com store, Plaintiff—like all Amazon third-party sellers—agreed to the Amazon Services Business Solutions Agreement ("BSA"). To protect customer trust, the BSA requires compliance with Amazon seller policies, including policies prohibiting the sale of inauthentic goods. Plaintiff violated these policies, and as a result, Amazon blocked Plaintiff's seller account as expressly authorized by the BSA governing the parties' commercial relationship.

Despite the parties *being already engaged* in an active arbitration involving Plaintiff's other seller account, Plaintiff inexplicably sued Amazon in this Court, asserting claims based on the BSA but ignoring the arbitration agreement in that same contract requiring arbitration of those claims. The claims are entirely without merit. There is no need for the Court to address the merits, however, because the claims must be resolved in arbitration. Under the BSA, Plaintiff agreed to arbitrate "any dispute with Amazon" and "any claim … relating in any way" to the BSA or Plaintiff's use of Amazon's services. This arbitration agreement is valid and enforceable under the FAA as courts repeatedly hold in enforcing this same arbitration agreement and as Plaintiff itself has conceded by initiating arbitration of similar claims under this very agreement.

---

[1] In the Complaint, Plaintiff incorrectly identifies Defendant as "Amazon.com Services, Inc." As explained more fully in footnote 4 below, the correct Defendant and entity with which Plaintiff did business and contracted in the United States is Amazon.com Services LLC. *See* Declaration of Andrea Gallucci ("Gallucci Decl."), Ex. B at 1.

Accordingly, the Court should compel Plaintiff's claims against Amazon to arbitration and dismiss those claims so that these parties may proceed in arbitration pursuant to their agreement.

## II. FACTUAL BACKGROUND

### A. The Amazon.com Store and Third-Party Sellers.

Every day, millions of customers shop for all kinds of products in the Amazon.com store. Gallucci Decl. ¶ 2. Amazon works hard to earn and maintain the trust and satisfaction of all these customers. *Id.* Customers shopping in Amazon stores can purchase a wide variety of products offered for sale by Amazon itself as well as by third-party sellers such as Plaintiff who list their own products for sale. *Id*. ¶ 3.

### B. Sellers Must Agree to the BSA to Register Seller Accounts.

To sell in the Amazon.com store, all third-party sellers must agree to the BSA and its incorporated policies. *Id.* ¶ 4. The Seller Agreement page in place when Plaintiff registered the account at issue required sellers to check a box confirming their agreement to the BSA. *Id.* Amazon provides all sellers with an opportunity to review the BSA before they decide whether to accept its terms and register a selling account. *Id.*

As shown below, the Seller Agreement page in place when Plaintiff registered its account in 2016 provided a clickable box immediately adjacent to the BSA hyperlink where the seller states: "I have read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement." *Id.* ¶ 5 (blue text hyperlinked to the BSA).




If a seller did not accept the BSA, they could not advance to the next page of the seller registration process, could not create a seller account, and could not sell in the Amazon.com store. *Id.* ¶ 4.

### C. Plaintiff Registered a Seller Account and Agreed to the BSA.

Plaintiff initiated the registration process for the Amazon seller account at issue in this case on May 18, 2016, and accepted the BSA on this same date. Gallucci Decl. ¶ 7. The version of the BSA in place on May 18, 2016, had been updated on February 29, 2016. *Id.* Below is a screenshot of Amazon's records confirming the time and date Plaintiff accepted the BSA. *Id.* ¶ 13, Ex. E.



### D. The BSA Includes an Arbitration Agreement.

The BSA states—in bold text—that "any dispute" with Amazon or any claim related "in any way" to the BSA or Plaintiff's use of Amazon services[2] must be resolved in arbitration:

> **[Amazon and the seller] both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court….**

Gallucci Decl. ¶ 8 & Ex. B § 18. The BSA also provides that disputes will be governed by the FAA, applicable federal law, and the laws of the State of Washington.[3] *Id.* ¶ 9. Amazon updates the BSA from time to time, but the provisions described above—including the arbitration agreement—have remained materially the same throughout the life of Plaintiff's seller account.[4] *Id.* ¶¶ 8-9 & Exs. C-D.

### E. Plaintiff Understands It Is Bound by the Arbitration Agreement, Having Invoked That Agreement To Initiate Arbitration Against Amazon Over Its Seller Account.

In December 2024, Plaintiff initiated an arbitration against Amazon with the American Arbitration Association ("AAA") for a separate seller account that Plaintiff registered and operates with Amazon. Declaration of Francesca Reifer ("Reifer Decl.") ¶ 2. In the arbitration demand, Plaintiff asserts that Amazon wrongfully deactivated its account in July 2024 on the basis that its other seller account was selling unsuitable items and may have engaged in deceptive or illegal activity. *Id.* ¶ 3. Plaintiff initiated arbitration pursuant to the arbitration provision in the version

---

[2] The BSA defines the term "Service" to include "Selling on Amazon, … Fulfillment by Amazon, … and, if the Elected Country for a Service is the United States, the Transaction Processing Services, together in each case with any related services and materials we make available." Gallucci Decl. ¶ 7, Ex. B § 18 (definitions).

[3] For sellers registered in the U.S., like Plaintiff, "Governing Laws" means "the laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law." Gallucci Decl., Ex. B § 18 (Definitions)

[4] In the 2016 BSA version, the Amazon Contracting Party for "Selling on Amazon" was Amazon Services LLC. *See* Gallucci Decl., Ex. B § 18 (Definitions). Amazon Services LLC has since become Amazon.com Services LLC, and accordingly, in more recent BSA versions, the Amazon Contracting Party is Amazon.com Services LLC. *Id.*, Ex. D § 18 (Definitions). Thus, Amazon.com Services LLC is the entity with which Plaintiff did business and contracted in the United States.

of the BSA dated January 21, 2020, which is identical to the arbitration provision in the BSA dated February 29, 2016 (that controls here). *Compare* Gallucci Decl., Ex. B § 18 *with* Gallucci Decl., Ex. C § 18; *see also* Reifer Decl. ¶ 3.

**III. PROCEDURAL HISTORY**

On January 10, 2025—while the parties were engaged in arbitration involving Plaintiff's other seller account—Plaintiff filed a complaint in this Court against Amazon alleging causes of action for breach of contract and conversion. Compl. (Dkt. No. 1) ¶¶ 38-51. Plaintiff alleges that Amazon placed Plaintiff's merchandise on "'reserve' status" in October 2024 and refused to accept customer orders for the goods on "reserve status." *Id.* ¶¶ 21-22. According to the Complaint, in January 2025 Amazon advised that it would not reactivate Plaintiff's account after "confirm[ing] that [Plaintiff's] seller account has been used to engage in deceptive, fraudulent, or illegal activity that harms [Amazon's] customers, other selling partners, and [Amazon's] store." *Id.* ¶ 33.

On January 10, 2025, Plaintiff filed an ex parte motion for a preliminary injunction to enjoin the disposal of Plaintiff's goods. Mot. Prelim. Inj. (Dkt. No. 2). On January 14, 2025, the Court denied Plaintiff's motion, ruling that there was no imminent threat of irreparable harm. Order (Dkt. No. 8). The Court further directed the partes to "submit a joint letter addressing whether the claims raised in this action should be addressed in arbitration or before this court." *Id.*

Amazon submitted a letter to the Court on January 17, 2025, explaining this dispute is subject to arbitration pursuant to the BSA. Amazon Letter (Dkt. No. 11). On January 21, 2025, Plaintiff submitted its own letter to the Court. Pl.'s Letter (Dkt. No. 13). In its Letter, Plaintiff does not dispute that it agreed to the BSA, that the BSA governs Plaintiff's relationship with Amazon, or that the BSA requires arbitration of "all disputes" with Amazon. *See id.* Nonetheless, Plaintiff asserts the BSA's arbitration agreement does not cover this dispute because its claims are purportedly based on Amazon's Account Health Assurance ("AHA") Program and the Unsuitable

Inventory Policy. *Id.* at 2. The parties jointly submitted a proposed briefing schedule for a motion to compel arbitration, (Dkt. No. 15), which the Court endorsed, (Dkt. No. 16).

Amazon now moves to compel arbitration.

## IV. ARGUMENT

This Court should compel arbitration of Plaintiff's claims against Amazon. The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)). As the Supreme Court has repeatedly emphasized, "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013).

On a motion to compel arbitration, the court addresses two threshold questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted). When both elements exist, as here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4).

Both elements are satisfied here. *First*, a valid arbitration agreement exists because Plaintiff agreed to the BSA which contains a binding arbitration provision. *Second*, the BSA requires the arbitrator to determine what claims are covered by the arbitration agreement, so any dispute as to the scope of the agreement is not an issue for the Court. Even if the Court considers the issue, the claims against Amazon fall plainly within the broad "any dispute" scope of the BSA.

### A. Plaintiff Entered a Valid Arbitration Agreement.

#### 1. Plaintiff Is Bound To Arbitrate Because Plaintiff Entered Into a Valid Arbitration Agreement.

In determining whether the parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Washington law which governs here,[5] contracts formed by clicking to agree to contract terms are enforceable like any other contract. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, *6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required to agree to the Terms online").

New York courts likewise enforce clickwrap agreements. *See, e.g.*, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" (internal citation and quotation marks omitted)); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (same) (collecting cases); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75

---

[5] Washington law governs this dispute. "Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract, and that designation is determinative if the state selected has sufficient contacts with the transaction." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *14 (S.D.N.Y. June 6, 2022) (quoting *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984)). Here, the contract states that it is governed by Washington law. Gallucci Decl., Ex B at 11 ("Definitions"). Additionally, Amazon's principal place of business is in Washington, Plaintiff entered into the agreement with Amazon in Washington, and Amazon performed the contract from its Washington headquarters. Gallucci Decl. ¶ 12. Accordingly, Washington has significant contacts with the transaction, and the Court should honor the parties' agreement to apply Washington law.

(2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'").

More specifically, courts across the country enforce the BSA and its arbitration clause. In *Shenzhen Shileziyou Technologies Co. v. Amazon.com, Inc.*, the court compelled arbitration pursuant to the BSA's arbitration clause because plaintiffs accepted the agreement in registering and operating their Amazon seller accounts. 2021 WL 5848062, at *2-3 (N.D. Cal. Dec. 9, 2021). Similarly, in *Peters v. Amazon Services, LLC*, the court compelled arbitration, holding that plaintiffs accepted the BSA and arbitration agreement when they subscribed as Amazon sellers. 2 F. Supp. 3d 1165, 1170-72 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016). The court found: "There is no dispute that Plaintiffs agreed to the BSA, including its forum selection clause," because "neither [plaintiff] could have opened their accounts without agreeing to the BSA ...." *Id*. at 1170; *see also Costless Wholesale, Inc. v. Amazon.com Servs. LLC*, 2023 WL 6224825 (C.D. Cal. Sept. 20, 2023) (compelling seller to arbitration under the BSA); *Hupala v. Tianhai Cent. Air Conditioning Co.*, 2023 WL 1824441, at *1 (W.D. Wash. Jan. 3, 2023) (compelling arbitration under the BSA).

The same holds true here. To register their Amazon seller account and sell on Amazon, Plaintiff provided sign-up information and agreed to the BSA by clicking the box and affirming the following: "I have read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement." Gallucci Decl. ¶¶ 4-5 & Ex. A. In so doing, Plaintiff agreed to arbitrate "any dispute" with Amazon. *See id*., Ex. B § 18. Plaintiff could not have signed up for an Amazon seller account without agreeing to the BSA and its mandatory arbitration provision. *Id.* ¶ 4. Indeed, Plaintiff does not—and cannot—seriously contest that it entered into a valid arbitration agreement as *Plaintiff* invoked this process by initiating an arbitration against Amazon in relation to its other seller account.

**2. Plaintiff Is Bound To Arbitrate Under the Doctrine of Equitable and Judicial Estoppel.**

Plaintiff is also bound to arbitrate under the doctrine of estoppel for two reasons: (1) Plaintiff is equitably estopped from claiming the benefit of the BSA's services—which Plaintiff is attempting to do by bringing a breach of contract claim based on the BSA—while ignoring its other terms requiring arbitration, found in Section 18 of the BSA; and (2) Plaintiff previously enforced this arbitration provision in the BSA when filing an arbitration demand in another action and is, therefore, now judicially estopped from taking an inconsistent position in this litigation.

First, equitable estoppel bars a party from accepting the benefits under a contract and suing in court to enforce those benefits while simultaneously avoiding the arbitration provision in that same agreement. For example, in *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, 2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017), the court rejected precisely what Plaintiff is trying to do here. There, the plaintiff sought to enforce a non-compete provision of an agreement but then argued that it was not subject to the arbitration provision in that same agreement. *Id.* at *5. The court, however, held that under the well-established doctrine of equitable estoppel, a party "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration." *Id.* (quoting *Mag Portfolio Consult., Gmbh v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)) (alterations in original); *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause."); *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 186-87 (E.D.N.Y. 2006) (same). The court therefore applied equitable estoppel to preclude plaintiff's attempt to claim the benefit of the contract while avoiding its arbitration clause. Notably, the court found that estoppel justified enforcing the arbitration provision against a nonsignatory, which

justification applies even more strongly against a signatory—like Plaintiff here. Indeed, Plaintiff is suing for breach of contract, seeking amounts allegedly owed to Plaintiff under the BSA—the contract governing its relationship with Amazon—while ignoring the arbitration agreement in that contact. Equitable estoppel does not permit such inconsistency.

Second, Plaintiff is judicially estopped from claiming the BSA's arbitration provision is inapplicable because it already invoked the applicability of that provision in its pending arbitration against Amazon. "Judicial estoppel is a doctrine that forbids a party from advancing contradictory factual positions in separate proceedings." *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996). Judicial estoppel has two elements: "[f]irst, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Negron v. Weiss*, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006). Here, the elements are easily satisfied. Plaintiff's position here is inconsistent with its position in its pending arbitration against Amazon, where Plaintiff invoked the same arbitration provision as governing disputes with Amazon over its seller account and represented to the arbitral tribunal that the arbitration provision applies. And Plaintiff's position that the arbitration provision applies was clearly adopted by the arbitration tribunal as the parties are actively arbitrating Plaintiff's claims. *See Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("The prior inconsistent assertion need not be made to a court of law[.]"); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) (the prior inconsistent position need only have been adopted "in some manner"). Plaintiff cannot have it both ways, invoking the arbitration agreement to bring claims against Amazon about one seller account while ignoring that very same agreement in bringing claims against Amazon about its other seller account.

Accordingly, for either or both of these reasons, estoppel likewise binds Plaintiff to arbitration here. Plaintiff cannot sue to enforce the BSA while ignoring its arbitration provision.

**B. The Parties' Arbitration Agreement Covers This Dispute.**

The Supreme Court holds that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue" and must compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Because the parties here unmistakably agreed to "delegate threshold arbitrability questions to the arbitrator," *id.*, the Court need not analyze any arbitrability issues to compel arbitration. But even if the Court does, Plaintiff's claims fall squarely within the BSA's arbitration provision which applies to "any dispute" between the parties. Gallucci Decl., Ex. B § 18.

**1. The Parties Delegated Issues of Arbitrability to the Arbitrator.**

In accepting the BSA, Plaintiff agreed to delegate any threshold issues of arbitrability to the arbitrator. That delegation obviates the need for the Court to consider any arguments regarding the scope or enforceability of the arbitration agreement.

As the Second Circuit recognizes, "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citation omitted). An example of "clear and unmistakable evidence" is "incorporating by reference the AAA Rules," because those rules provide that arbitrators are to determine their own jurisdiction. *Id.* at 210-11; *see also McCrae v. Oak St. Health, Inc.*, 2024 WL 4692047, at *9 (S.D.N.Y. Nov. 4, 2024), *aff'd*, 2025 WL 415389 (S.D.N.Y. Feb. 6, 2025) (incorporating the AAA rules constitutes clear and unmistakable delegation because "AAA Rule 7 providers [sic] that the arbitrator has the power to determine the scope and validity of the arbitration provision"); *Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL

7623670, at *10 (S.D.N.Y. Nov. 14, 2023) ("[T]he incorporation of the AAA Rules (or similarly worded rules) generally delegates 'arbitrability' issues to the arbitrator.") (citing cases).

Here, the parties' agreement clearly and unmistakably delegates arbitrability issues to the arbitrator by incorporating AAA rules. The BSA provides that "[t]he arbitration will be conducted by the American Arbitration Association (AAA) under its rules[.]" Gallucci Decl., Ex. B § 18. The AAA commercial rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Reifer Decl. ¶¶ 4-5, Exs. B-C. The parties' delegation of arbitrability to the arbitrator obviates the need for the Court to consider Plaintiff's arguments about the scope of the arbitration agreement, which is for the arbitrator to decide. *See Henry Schein*, 586 U.S. at 69.

**2. Plaintiff's Claims Fall Within the Broad Scope of the Arbitration Agreement.**

Even if the Court reaches arbitrability—which it should not because the BSA delegates arbitrability to an arbitrator—it is plain that the agreement to arbitrate encompasses Plaintiff's claims. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, enforcement of an arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "construction of the contract language itself." *Moses H. Cone,* 460 U.S. at 24-25.

Plaintiff's claims—which include a claim for breach of the BSA—fall within the broad "any dispute" arbitration provision of the BSA. The BSA provides that "**any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration … rather than in court.**" Gallucci Decl. ¶ 8 & Ex. B § 18. Plaintiff challenges Amazon's decisions to place its seller account on "reserve status" and to not reactivate it. Compl. ¶¶ 21-22, 33. Plaintiff's claims thus relate both to the BSA and to its use of Amazon's services and must be "**resolved by binding arbitration … rather than in court**." Gallucci Decl. ¶ 8 & Ex. B § 18.

Plaintiff's arguments in its Letter to the Court that the BSA does not apply to this dispute are meritless. The BSA is the contract that governs Plaintiff's relationship with Amazon, Gallucci Decl. ¶¶ 4, 7, and is the basis for Plaintiff's request for damages and payment. Indeed, Plaintiff asserts a breach of contract claim based on its allegations that Amazon breached the BSA by wrongfully deactivating one of Plaintiff's seller accounts. *See* Compl. ¶¶ 34-41. Plaintiff's Letter to the Court contends that the BSA's arbitration provision is inapplicable because its claims are purportedly based on Amazon's AHA Program and the Unsuitable Inventory Policy. Pl.'s Letter at 2. But the scope of the parties' arbitration agreement does not depend on which particular Amazon policy is in dispute, as Plaintiff wrongly claims. Rather, the BSA's arbitration agreement covers "any dispute with Amazon … or claim relating in any way to [the BSA] or [Plaintiff's] use of [Amazon's] Services." Gallucci Decl., Ex. B § 18. Plaintiff's claims relate to the BSA and to Plaintiff's use of Amazon's services, falling plainly within the agreement's broad scope.

### C. The Court Should Compel Arbitration and Dismiss the Action

The Second Circuit has explained that although a stay is mandatory if a party requests a stay, the FAA "permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration." *Dylan 140*

*LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020). This is consistent with the Supreme Court's recent directive that a stay pending arbitration is mandatory if either party requests one. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). Amazon does not seek a stay but, rather, dismissal, which is appropriate given that all claims are subject to arbitration and the parties are already engaged in pending arbitration. Accordingly, unless Plaintiff requests a stay, the Court should dismiss this action without prejudice in the interest of judicial efficiency.

## V. CONCLUSION

For the above reasons, Amazon respectfully requests that the Court enter an order compelling arbitration of Plaintiff's claims and dismissing this action without prejudice so that the parties may proceed in arbitration.

DATED this 28th day of February, 2025.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Amazon.com Services LLC.

By: <u>*/s/ Geoffrey S. Brounell*</u>
Geoffrey S. Brounell
Francesca Reifer

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 603-6404
geoffreybrounell@dwt.com
francescareifer@dwt.com

John Goldmark (*pro hac vice forthcoming)*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Phone: (206) 757-8068
johngoldmark@dwt.com