UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVE BRANCH ENTERPRISES, INC.,

                Plaintiff,

    -v-

AMAZON.COM SERVICES, INC.,

                Defendant.

No. 25-CV-0240 (VSB) (RFT)

**OPINION & ORDER**

---

**INTRODUCTION**

On January 10, 2025, Plaintiff sued Defendant, alleging breach of contract and conversion. (*See generally* ECF 1, Compl.) On February 28, 2025, Defendant moved to compel arbitration pursuant to the terms of the Amazon Services Business Solutions Agreement ("ASBSA") and the Federal Arbitration Act ("FAA") and to dismiss this matter. (*See* ECF 17, Mot. To Compel Arb. ("Mot.")) Pending before this Court is Defendant's fully briefed motion to compel arbitration and dismiss this case. This motion falls within the scope of my reference. (*See* ECF 32, Order of Ref.) I have reviewed the parties' filings on the docket. For the reasons set forth below, Defendant's motion to compel arbitration is GRANTED IN PART, in that the parties shall participate in arbitration as required by the ASBSA, and DENIED IN PART, in that this case is STAYED pending a decision on Plaintiff's claims against Defendant in arbitration.[1]

---

[1] Motions to compel arbitration are non-dispositive and therefore within a magistrate judge's purview to "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *See Desarrolladora La Ribera v. Anderson*, No. 24-CV-0067 (LAK) (BCM), 2024 WL 5186600, at *1 n.1 (S.D.N.Y. Dec. 20, 2024); *see also Chen-Oster v. Goldman, Sachs & Co.*, 449 F.

**BACKGROUND**

I.    **Factual Background**

Amazon.com offers products for sale by Amazon itself as well as by third-party sellers such as Plaintiff. (*See* ECF 20, Declaration of Andrea Gallucci in Supp. of Mot. ("Gallucci Decl.") ¶ 3.) To sell products on the Amazon.com store, third-party sellers must agree to the ASBSA and its incorporated policies. (*See id*. ¶ 4.) Plaintiff registered an account on the Amazon.com store by filling out a seller agreement page, which required Plaintiff to check a box confirming the agreement to the ASBSA updated as of February 29, 2016. (*See id.* ¶¶ 4, 13.)

The ASBSA states that "any dispute" with Amazon or any claim related "in any way" to the ASBSA or Plaintiff's use of Amazon services must be resolved in arbitration:

> [Amazon and the seller] both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court . . . .

(ECF 20-2, ASBSA Dated Feb. 29. 2016 § 18.)[2] The ASBSA defines the term "Service" to include "Selling on Amazon, . . . Fulfillment by Amazon, . . . and, if the Elected Country for a Service is the United States, the Transaction Processing Services, together in each case with any related services and materials we make available." (*Id.*) The ASBSA provides that "[t]he arbitration will be conducted by the American Arbitration Association (AAA) under its rules[.]" (*Id.*) The AAA commercial rules state that "[t]he arbitrator shall have the power to rule on his or her own

---

Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).

[2]    Unless otherwise indicated, this opinion and order omits internal quotation marks, emphases, and citations from quotations.

jurisdiction, including any objections with respect to the existence, scope, or validity of the

arbitration agreement or to the arbitrability of any claim or counterclaim." (ECF 19, Declaration

of Francesca Reifer in Supp. of Mot. ("Reifer Decl.") ¶¶ 4-5; ECF 19-2, AAA Com. Rules Dated

Oct. 1, 2013 ("Oct. AAA Com. R.") at 13; ECF 19-3, AAA Com. Rules dated Sept. 1, 2022 ("Sept.

AAA Com. R.") at 14.) The ASBSA further provides that disputes will be governed by the FAA,

applicable federal law, and the laws of the State of Washington. (*See* ECF 20, Gallucci Decl. ¶ 9.)

On June 25, 2023, Defendant notified Plaintiff that because Plaintiff had maintained a

high "Account Health Rating," Defendant was enrolling Plaintiff in Defendants' Account Health

Assurance ("AHA") Program. (ECF 25, Affirmation of Joseph Oberlander in Opp. to Mot.

("Oberlander Aff.") ¶ 8.) In the communication notifying Plaintiff that Plaintiff was being

enrolled in the AHA Program, Defendant stated that if Defendant "identif[ied] critical policy

issues with [Plaintiff's] selling account," Defendant would "review the issues and proactively

work with [Plaintiff] to resolve" the problems; the communication went on to state that

Defendant would not deactivate the account if Defendant could reach Plaintiff within 72 hours

of identifying issues. (*See id.*)

Plaintiff alleges that Defendant placed $5 million worth of Plaintiff's inventory on

"reserve status" in October 2024 and refused to accept customer orders for Plaintiff's goods on

reserve status; Defendant had not provided Plaintiff with any advance notice of potential issues

with Plaintiff's products and Defendant made no effort to contact Plaintiff to resolve any issues.

(ECF 1, Compl. ¶¶ 18-24.) Plaintiff reached out to Defendant, which promised to investigate the

matter, but Defendant never explained the issue, notwithstanding Plaintiff's follow-up

communications. (*See id.* ¶¶ 27-28.)

In December 2024, Defendant informed Plaintiff that Plaintiff's merchandise was under review for authenticity and sought "an enormous amount of documentation for a vast number of items of merchandise" within 30 days, stating that if Plaintiff failed to respond, Defendant would destroy Plaintiff's inventory. (*Id.* ¶ 31.)

On January 2, 2025, Defendant acknowledged its receipt of Plaintiff's submission responding to Defendant's information request. However, Defendant advised that it would not reactivate Plaintiff's account after "confirm[ing] that [Plaintiff's] seller account has been used to engage in deceptive, fraudulent, or illegal activity that harms [Defendant's] customers, other selling partners, and [Defendant's] store." (*Id.* ¶ 33.) Defendant indicated that the inventory might be disposed of further to Defendant's policies. (*See id.*) Defendant continues to prevent Plaintiff from selling its inventory and charges storage fees to Plaintiff. (*See id.* ¶ 36.)

## II.    Procedural Background

Plaintiff filed suit against Defendant for breach of contract and conversion on January 10, 2024 (*see* ECF 1, Compl.), along with an ex parte motion for a preliminary injunction to enjoin the disposal of Plaintiff's goods. (*See* ECF 2, Mot. for Prelim. Inj.) On January 14, 2024, the Court denied the motion for a preliminary injunction. (*See* ECF 8, Order.)

The parties filed letters with the Court addressing whether this dispute is subject to arbitration under the ASBSA. (*See* ECF 11, Def. Ltr; ECF 13, Pl. Ltr.) Defendant moved to compel arbitration and to dismiss this case on February 28, 2025. (*See* ECF 17, Mot.) Plaintiff filed two declarations in opposition, but no memorandum of law. (*See* ECF 25, Oberlander Aff.; ECF 26, Affirmation of Avrom R. Vann in Opp. to Mot. ("Vann Aff.") Defendant filed a reply. (*See* ECF 28,

Def.'s Reply.) The motion is now fully briefed and was referred to me by Judge Broderick. (*See* ECF 32, Order of Ref.)

Defendant argues that the ASBSA has an arbitration provision that contemplates that the arbitrator shall determine questions of arbitrability; that equitable and judicial estoppel require Plaintiff to arbitrate this matter; and that even if the Court decides the question of arbitrability, the current dispute falls within the scope of the ASBSA arbitration provision. (*See* ECF 18, Def.'s Mem. in Supp. of Mot. ("Def.'s Mem.") at 11-13.) Defendant seeks dismissal of the case rather than a stay (*see* ECF 17, Mot.), because Defendant contends that all Plaintiff's claims are subject to arbitration and the parties are already engaged in pending arbitration.

Plaintiff does not contest that the ASBSA requires the parties to arbitrate disputes arising under the ASBSA but contends that the dispute in this case arises under the AHA Program rather than the ASBSA and that the AHA Program contains no arbitration provision. (*See* ECF 26, Vann Aff. ¶¶ 6-7.) Plaintiff does not address whether a stay or dismissal would be appropriate if the Court were to compel arbitration. (*See generally id*.)

In its reply brief, Defendant argues that Plaintiff's failure to submit a memorandum of law and citation to legal authority in its supporting affidavits are sufficient cause to grant Defendant's motion to compel arbitration; that Plaintiff has effectively conceded certain or Defendant's arguments by failing to address them; and that Plaintiff's argument that this suit relates not to the ASBSA but rather to the AHA Program lacks merit. (*See* ECF 28, Def.'s Reply at 2-6.)

## LEGAL STANDARDS

**I.    Contract Interpretation Is a Matter for the Court**

Under governing Washington State law, "[c]ontract interpretation is a matter of law." *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013) (en banc). The Court must interpret unambiguous contractual provisions based on "their plain and ordinary meaning." *Samarzich v. Aetna Life Ins. Co. of Hartford, Conn.*, 40 P.2d 129, 131 (Wash. 1935).

**II.    Arbitrability**

The FAA governs any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Before a court may rule on the enforceability or scope of an arbitration agreement, it must determine the threshold issue of whether those questions are for the court or the arbitrator to decide. *See Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 74 (S.D.N.Y. 2023). "The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" and draw all reasonable inferences in favor of the non-moving party. *Id.* A court may compel arbitration only within the jurisdiction where the court is located.

*See, e.g.*, *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (noting that "the Court's authority to compel arbitration under [9 U.S.C. § 4] is restricted to arbitration proceedings that occur within this District").

"The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002); *see also Friedman v. Sunrise Senior Living Mgmt., Inc.*, No. 23-CV-8901 (GHW) (GS), 2025 WL 958550, at *4 (S.D.N.Y. Mar. 31, 2025).

 "A court presented with a motion to compel arbitration must first establish that an arbitration agreement exists." *Reid*, 697 F. Supp. 3d at 74. This determination "is governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). If a court finds that the parties entered into an arbitration agreement, it must then determine "whether the dispute at issue comes within the scope of the arbitration agreement." *Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024) (quoting *ACE Cap. Re Overseas*, 307 F.3d at 28). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

Courts in this Circuit previously began the arbitrability analysis by classifying the arbitration clause as either broad or narrow. *See Keystone Food Holdings, Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 143-44 (S.D.N.Y. 2020). However, courts can no longer rely on broad arbitration clauses to presume arbitrability in the first instance, *see Silver*, 724 F. Supp. 3d at

222, because the Supreme Court's ruling in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), abrogated prior Second Circuit caselaw directing courts first to identify the arbitration clause as broad or narrow and then to apply a presumption of arbitrability if the clause was broad. *See Local Union 97 v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113-14 (2d Cir. 2023). Rather, courts must first turn to "ordinary principles of contract interpretation" to assess whether the "particular dispute is covered by the language to which the parties agreed." *Id.* at 114. As such, "the presumption of arbitrability is a court's last, rather than first, resort" and is invoked "only where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." *Id.* at 113-14; *see also Silver*, 724 F. Supp. 3d at 222.

## IV.    Stays of Court Proceedings Pending Arbitration

When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceedings pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration; rather the FAA compels the court to stay the proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

The FAA "permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration*." Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020). Although the Second Circuit has not addressed whether the FAA requires a stay of

proceedings when no party has requested a stay, district courts in this Circuit have found that a stay may be appropriate in this circumstance. *See, e.g.*, *Merrick v. UnitedHealth Grp. Inc.*, 127 F. Supp. 3d 138, 154 (S.D.N.Y. 2015); *China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 53 (S.D.N.Y. 2016); *McNeill v. Raymour & Flanigan Furniture*, No. 15-CV-1473 (GTS) (TWD), 2016 WL 7048712, at *7 (N.D.N.Y. Dec. 5, 2016).

In *Merrick*, the Court granted the defendants' motion to compel arbitration; the defendants asked the Court to dismiss rather than stay case; and the plaintiff did not request a stay. 127 F. Supp. 3d at 153. The Court held that although no party had requested a stay, the Court was not required to dismiss the action, and it stayed the case pending arbitration. *See id.* at 154. In *China Media Express Holdings*, under similar circumstances, the Court stayed the case, because "a stay w[ould] permit prompt arbitral resolution of [the plaintiff's] claim and permit the parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation should judicial participation . . . prove necessary." *China Media Express Holdings,* 182 F. Supp. 3d at 53-54 (quoting *Moton v. Maplebear Inc.*, No. 15-CV-8879 (CM), 2016 WL 616343, at *9 (S.D.N.Y. Feb. 9, 2016)).

## ANALYSIS[3]

### I.    Arbitrability of the Parties' Dispute

Defendant contends and Plaintiff does not dispute that the ASBSA includes an

agreement to arbitrate disputes. (*See* ECF 28, Def. Reply at 1.) Accordingly, the question on this

motion is whether the ASBSA arbitration provision covers the dispute in this case.

The arbitration clause is worded broadly, covering "any dispute with Amazon or its

Affiliates or claim relating in any way to this Agreement or your use of the Services," with

Services being defined as "Selling on Amazon, . . . , together . . . with any related services and

materials we make available."  (*See* ECF 20-2, ASBSA Feb. 2016 at 5, 6.) Notably, the ASBSA

arbitration provision encompasses not only disputes that arise out of the ASBSA, but also any

disputes with Defendant or its affiliates and any disputes arising out of an entity's selling on

Amazon.com and any related services made available by Defendant, including the AHA

Program.

This broad language suggests that the parties intended to submit questions of

arbitrability to the arbitrator. *See, e.g.*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 118,

120-23 (2d Cir. 2003) (holding that "a referral of any and all controversies reflects such a broad

---

[3]    I decline Defendant's invitation to disregard Plaintiff's arguments in opposition to the
motion to compel arbitration based on Plaintiff's failure to file a memorandum of law. Plaintiff's
arguments are readily discernible in the attorney declaration, and there is a strong preference
for questions to be decided on the merits rather than based on procedural errors. *See Anhui
Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*, No. 18-CV-12255 (MKV)
(KHP), 2021 WL 621205, at *1-2 (S.D.N.Y. Feb. 17, 2021). Additionally, I disagree that Plaintiff
failed to address Defendant's argument that the ASBSA delegates decisions about arbitrability
to the arbitrator (*See* ECF 28, Def. Reply at 3-4.) I therefore decline to conclude that Plaintiff has
conceded that point, and I address the issue on the merits.

grant of power to the arbitrators as to evidence the parties' clear inten[t] to arbitrate issues of arbitrability"). This conclusion is supported by ASBSA's provision that any arbitration shall be conducted by the AAA under its rules, which give the arbitrator the power to rule on his own jurisdiction. (*See* ECF 20-2, ASBSA Feb. 2016 § 18; ECF 19, Reifer Decl. ¶¶ 4-5; ECF 19-2, Oct. AAA Com. R. at 13; ECF 19-3, Sept. AAA Com. R. at 14.) *See also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 210-11 (2d Cir. 2005) (holding that "a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules . . . cannot . . . disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability"); *McCrae v. Oak St. Health, Inc.*, No. 24-CV-1670 (JPO) (KHP), 2024 WL 4692047, at *9 (S.D.N.Y. Nov. 4, 2024) (incorporating the AAA rules constitutes clear delegation to the arbitrator of determinations about arbitrability); *Lewis v. Samsung Elecs. Am., Inc.*, No. 22-CV-10882 (JLR), 2023 WL 7623670, at *10 (S.D.N.Y. Nov. 14, 2023) ("[T]he incorporation of the AAA Rules (or similarly worded rules) generally delegates arbitrability issues to the arbitrator.").

Plaintiff argues that its dispute with Defendant is governed by the AHA Program rather than the ASBSA; that the ASBSA makes no mention of the AHA Program; that the AHA Program has no arbitration provision; and that the AHA Program "represents the entire agreement between the parties with respect to the Services and related subject matter and supersedes any previous or contemporaneous oral or written agreements and understandings." (ECF 26, Vann Aff. ¶¶ 3, 7 (quoting ECF 20-4, AHA Program at 11).) However, as Defendant notes, the ASBSA expressly incorporates Amazon's programs and their policies, which include the AHA Program. (*See* ECF 20, Gallucci Decl. Ex. B § 18 (quoting Section 18 of the ASBSA as stating that "[t]his Agreement incorporates and you accept the applicable Service Terms and Program

Policies"); *id.* (quoting the ASBSA as defining "Program Policies" as "all terms, conditions, policies, guidelines, rules and other information . . . on Seller Central including those shown on the Policies and Agreements section of Seller Central or elsewhere in the Help section of Seller Central").)

Defendant therefore has demonstrated that the parties entered into an agreement – the ASBSA – that contains an arbitration provision. The ASBSA incorporates by reference the terms of Defendant's various program policies, including the policies of the AHA Program. Accordingly, the terms of the AHA Program are part of the ASBSA; any conclusion that the AHA Program nullifies the provisions of the ASBSA is contrary to the "plain and ordinary meaning" of the ASBSA's unambiguous provision incorporating by reference the AHA Program's policies. *See Samarzich*, 40 P.2d at 131. The ASBSA arbitration provision encompasses not only disputes that arise out of the ASBSA, but also any disputes with Defendant or its affiliates and any disputes arising out of an entity's selling on Amazon.com and any related services made available by Defendant, which include the AHA Program. Thus, Defendant has shown that Plaintiff's claims in this matter fall within the scope of the ASBSA's arbitration provision. And the ASBSA's arbitration provision contemplates that the arbitrator will determine its own jurisdiction.

For the foregoing reasons, I conclude that the determination of whether the parties' dispute in this case is arbitrable must be decided by the arbitrator.[4]

---

[4]    Because I conclude that the arbitration agreement in the ASBSA evidences an intent on the parties' part to delegate the question of arbitrability of disputes to the arbitrator, I do not address the alternative arguments that Plaintiff is required to participate in arbitration based on the doctrines of equitable and judicial estoppel. Similarly, because I conclude that the arbitrator is tasked with determining the arbitrability of this dispute, I do not reach the question whether the current dispute falls within the scope of the arbitration provision.

## II.    Dismissal Versus Stay of this Case

Although Defendant asks that this case be dismissed and no party has requested a stay, the Court is not required to dismiss the action; the Court may instead stay the case pending a decision in the arbitration. *See Merrick*, 127 F. Supp. 3d at 154; *China Media Express Holdings*, 182 F. Supp. 3d at 53-54. Because there is a chance – albeit in my view a remote one – that the arbitrator could conclude that this dispute is not arbitrable, or in the event that judicial intervention is needed for some other reason, it is more efficient to stay rather than dismiss this case. *See China Media Express Holdings*, 182 F. Supp. 3d at 53-54.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to compel arbitration and to dismiss (ECF 17) is GRANTED IN PART, in that the parties shall participate in arbitration, with such arbitration to take place within this District; and Defendant's motion is DENIED IN PART, in that the matter is STAYED until resolution of Plaintiff's claims against Defendant in arbitration. Plaintiff and Defendant shall file a joint update on the status of the arbitration on the first business day of every month, beginning on March 1, 2026, until the arbitration is complete. The Clerk of Court is respectfully requested to terminate ECF 17.

DATED:          February 18, 2026
                New York, New York

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**