# EXHIBIT A

**AMERICAN ARBITRATION ASSOCIATION**

**Commercial Arbitration Tribunal**

**In the Matter of Arbitration Between:**

Olive Branch Enterprises, Inc.,

Claimant,

vs.

Amazon.com Services, Inc.,

Respondent,

Case No. 01-26-0001-0740

**Order and Award on Arbitrability**

---

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 18, 2016, and having been duly sworn, and having duly heard the proofs and allegations of the Claimant, represented by Avrom Vann, Esq., and Respondent, represented by Annamaria Taskai, Esq. and Molly Tullman, Esq. do hereby, AWARD, as follows:

The sole issue before me, as arbitrator, is to rule on whether the dispute described below is arbitrable.

On January 10, 2025, Olive Branch Enterprises, Inc. (the "Claimant") filed an action in the United States District Court for the Southern District of New York (the "District Court") against Amazon.com Services, Inc. (the "Respondent") for breach of contract, conversion, and injunctive relief, seeking damages and a preliminary injunction to prevent Respondent from disposing of Claimant's merchandise on deposit with Respondent. On January 14, 2025 the District Court denied Claimant's motion for a preliminary injunction. On February 28, 2025 the Respondent moved to compel arbitration pursuant to the terms of the Amazon Services Business Solutions Agreement entered into by the parties on May 18, 2016 (the "BSA") and the Federal Arbitration Act (the "FAA") and to dismiss the matter.

On February 18, 2026 the District Court granted the motion in part to compel the parties to participate in the arbitration required by the BSA and denied the motion in part to dismiss the case and stayed the case pending a decision on whether Claimant's claims against the Respondent should be decided in arbitration. The District Court further determined that the issue of whether

the Claimant's claims against the Respondent are arbitrable should be determined by an arbitrator rather than the District Court and directed that the arbitration on this issue should be held in the Southern District of New York. Decision and Order in *Olive Branch Enterprises, Inc. v. Amazon.com Services, Inc.,* Case No. 25-CV-0240 (VSB) (RFT) dated February 18, 2026.

On March 8, 2026 counsel for Claimant filed a Demand for Arbitration with the American Arbitration Association ("AAA") in New York to determine whether the claims brought by Claimant against Respondent in the District Court are arbitrable and subject to the arbitration provision in the BSA. On May 6, 2026 I was appointed the arbitrator to decide the issue of arbitrability. Since my office is located in New York City, this arbitration is being held in the Southern District of New York.

I convened the Preliminary Meeting in this arbitration on June 9, 2026 and issued Scheduling Order No. 1 dated June 9, 2026 pursuant to which the parties were directed to submit their respective briefs on the issue of arbitrability by August 14, 2026 and their respective reply briefs by September 14, 2026 (later extended to September 30, 2026 by mutual agreement of the parties and the consent of the Arbitrator). The parties submitted their respective briefs and reply briefs on time, and after reviewing them, I informed the parties that a hearing on the issue of arbitrability would not be necessary.

The background of the case is the following. The Claimant entered into the BSA with Respondent on May 18, 2016 to create and operate a seller's account to sell its products in the Amazon.com store. The BSA is governed by the State of Washington law, the FAA, and the commercial arbitration rules of the AAA and contains an arbitration clause in paragraph 18 which reads in relevant part as follows: "…Amazon and you [the company seeking to sell its products on Amazon.com] both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court [with certain exceptions not relevant to this case]…" The term "Service" is broadly defined in the BSA to include "Selling on Amazon,…Fulfillment by Amazon,…and, if the Elected Country for a Service is the United States, the Transaction Processing Services, together in each case with any related services and materials we make available."

Using the Respondent's portal and website, Claimant primarily sold small electronic products manufactured by established companies, such as vacuum cleaners, coffee machines, electronic thermostats, copy machines, leaf blowers, computer screens, and mixers. Claimant would deliver its merchandise to Respondent who would hold the merchandise in storage pending customer orders and would ship the products to customers, collect the purchase price, deduct its service fee and other deductions and remit the net proceeds to the Claimant.

The relationship between Claimant and Respondent operated smoothly for approximately eight years. However, on October 25, 2023 Respondent notified Claimant that it was enrolling Claimant in its Account Health Assurance program ("the AHA Program") because Claimant had

maintained a high Account Health Rating. Respondent notified Claimant that under the AHA Program, if Respondent identified critical policy issues with Claimant's selling account, Respondent would review the issues and proactively work with the Claimant to resolve the problems, and that Respondent would not deactivate Claimant's account if Respondent could reach the Claimant within 72 hours of identifying issues.

In October 2024 Respondent placed $5 million of Claimant's inventory on "reserve status" meaning that it would not accept any customer orders for Claimant's products or ship any of Claimant's products to customers. On November 13, 2024 Respondent informed Claimant that its merchandise was under review by Respondent for authenticity and demanded voluminous product documentation from Claimant to demonstrate the full supply chain to prove authenticity of Claimant's products, and it deactivated Claimant's account. In response, Claimant alleged that Respondent had not provided it with any advance notice of potential issues with its products, made no effort to contact it to resolve any issues, and had not followed up on promises to investigate or explain the matter. In January 2025, Respondent acknowledged its receipt of Claimant's submissions but refused to reactivate Claimant's account on the basis that its investigation showed that Claimant's seller's account had been used to engage in deceptive, fraudulent or illegal activity that harmed Respondent's customers, other selling partners and Respondent's store. Respondent further indicated that Claimant's merchandise might be disposed of under Respondent's Unsuitable Inventory Investigations Policy (the "UII Policy").

In the District Court proceeding, the Claimant argued that its action against Respondent for breach of contract and conversion should be decided by the District Court under the AHA Program and not in arbitration under the BSA because the dispute arises under the AHA Program, not the BSA, and the AHA Program does not contain an arbitration provision. The Respondent argued that the dispute between the Claimant and the Respondent falls within the scope of the arbitration agreement in the BSA and that the issue of the arbitrability of the dispute should be decided by an arbitrator. In the initial part of its decision, the District Court conducted a detailed analysis of the threshold issue of whether it is for the court or the arbitrator to rule on the scope and enforceability of the arbitration clause in the BSA and concluded that the broad language of the BSA evidenced an intent of the parties to arbitrate issues of arbitrability. The District Court further stated that its conclusion was supported by the BSA provision that any arbitration shall be conducted by the AAA under its commercial arbitration rules which give the arbitrator the power to rule on his or her own jurisdiction, citing to *Contec Corp. v. Remote Sol., Co.,* 398 F.3d 205, 210-11 (2d Cir. 2005) holding that "a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules…cannot…disown an agreed-to obligation to arbitrate all disputes, including the question of arbitrability). The District Court also cited two other cases for the proposition that the incorporation of the AAA Rules generally delegates arbitrability issues to the arbitrator. See *McCrae v. Oak St. Health, Inc.* No. 24-CV-1670 (IPO) (KHP, 2024 WL 4692047, at *9 (S.D.N.Y. Nov. 4, 2024) and *Lewis v. Samsung Elecs. Am., Inc.* No. 22-CV-10882 (JLR), 2023 WL 7623670 at *10 (S.D.N.Y. Nov. 14, 2023). On the basis of this, the District Court

concluded that the scope and enforceability of the BSA arbitration provision should be determined by an arbitrator, not the District Court, and ordered the arbitration to take place within the Southern District of New York.

Claimant's position in this arbitration is that its disputes with Respondent arise under the AHA Program and the UII Policy, which are separate and independent of the BSA and do not contain an arbitration provision or incorporate by reference the arbitration provision of the BSA. Claimant argues that because there is no binding agreement between Claimant and Respondent to arbitrate Claimant's disputes with Respondent under the AHA Program and the UII Policy, such disputes are not subject to arbitration but are properly before the District Court. Claimant cites both State of Washington and New York cases for this position. *Saleemi v. Doctor's Assocs.,* 176 Wn.2d 368, 292 P.3d 108 (2013) and *Application of Doughboy Industries, Inc*., 17 A.D.2d 216, 233 N.Y.S.2d 488 (1962).

Claimant further argues that where Respondent intends that the provisions of the BSA shall apply to other Amazon programs or policies, those documents expressly refer to and incorporate the BSA, and Claimant cites as examples for this Amazon's Express Payout Bank Account and Debit Card Policies, its Luxury Program Policy, its Brand Analytics Terms and Conditions, its Auto Terms and Conditions and its Lab Central Program Policy, each of which expressly incorporates the BSA. Claimant's Brief on the Issue of Arbitrability, dated August 14, 2026, pp. 9-13. Claimant also cites two Amazon programs, the Category Product and Listing Restrictions and the Warehousing and Distribution program policy, where the BSA is not expressly incorporated by reference into those programs, and Claimant contends that disputes under those programs would not be arbitrable under the BSA, just as it contends this result should also be the case for disputes under the AHA Program and the UII Policy.

Respondent, on the other hand, contends in this arbitration that the scope of the BSA arbitration provision encompasses the disputes between the parties under the AHA Program and the UII Policy because the BSA expressly provides that sellers on Amazon agree to be bound by its terms, including the Service Terms and Program Policies that apply for each country for which the seller registers. Respondent's Reply Brief dated September 30, 2026, pp. 1-2. Respondent contends that the AHA Program and the UII Policy fall directly into the broader term "Selling on Amazon" in the definition of Services in the BSA, and that the Account Health Rating Program Policy is properly part of the definition of "Program Policies" in the BSA. Respondent's Reply Brief dated September 30, 2026, pp. 1-3.

Having considered these positions, I conclude that the breadth of the Service provisions in the BSA cover the services provided under the AHA Program and the UII Policy and therefore the claims which Claimant has asserted against the Respondent under the AHA and the UII Policy are arbitrable under the BSA. A significant factor in my decision is that the AHA Program and the UII Policy are not stand-alone contractual relationships between Amazon and a seller on Amazon.com but are available only to a seller whose selling account exists under the BSA. As an

example of this inter-connection, the AHA Program exists to protect a seller from deactivation of its seller's account under Section 3 of the BSA, and eligibility for that protection depends on the Account Health Rating of that account, another Service term.

An additional factor in my reaching this decision is that if there were to be separate proceedings involving claims under the BSA in arbitration and claims under the AHA Program and the UII Policy in court, there could be conflicting results and resulting confusion.

Because of this dependence of the AHA Program and the UII Policy on the BSA, I hereby RULE and ORDER that the claims asserted by Claimant against Respondent in the District Court proceeding are arbitrable pursuant to the BSA and its arbitration clause.

The administration fees of the American Arbitration Association totaling $4,825.00, and compensation of the Arbitrator totaling $21,000.00 shall be borne as incurred.

This Award is in full settlement of the issue of arbitrability. Any claims not expressly granted herein are denied.

Date: October 22, 2026

Peter J. Pettibone
Arbitrator

I Peter J. Pettibone, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Date: October 22, 2026

Peter J. Pettibone
Arbitrator